## McWilliams v. Myers.

1. Canceling sheriff's sale. On the 19th day of February, 1856, Casady confessed a judgment in favor of Seevers, on the 19th of June he conveyed certain real estate, upon which the judgment was a lien, to plaintiff; on the 1st of January, 1857, he conveyed certain other real estate, upon which it was also a lien, to the defendant, Myers. In August, 1857, the judgment was assigned to White. On the 18th of November, in the same year, an execution was issued and levied upon the property sold to Myers, together with another piece of real estate belonging to Casady, but upon which there was a mortgage outstanding. After the property was advertised for sale the judgment was assigned to Myers, upon whose order the execution was returned. An *alias fi. fa.* was sued out upon the 30th day of the same month, and levied upon the property taken in the first execution, upon the property sold to plaintiff, and a large amount of other property. All was advertised, and the property belonging to plaintiff and another lot were sold. The property levied upon in the first execution was not offered, although it was known to the assignee and the officer that persons were at the sale wishing to bid therefor a sum sufficient to discharge the judgment. *Held,* that the facts present a case of injustice and oppression, against which equity should afford relief, and that the decree below annulling the sale was substantially correct.

2. Assignment of a judgment. The assignment of a judgment carries with it, as a necessary incident, the right to use the name of the judgment creditor, in issuing process for the collection of the same.

3. Return of execution. Neither the judgment creditor nor his assignee can treat an execution regularly issued, and levied upon property subject to execution and sufficient to satisfy the judgment, as a nullity.

4. Same. When the proceedings under which an execution was issued, are discovered to be irregular, the judgment creditor may order a return after levy and before sale. An execution may be returned by agreement of parties.

5. Judgment creditor one of several owners. When a judgment creditor is one of several owners of property encumbered by his judgment lien, his remedy, after exhausting the unencumbered property of the judgment debtor is by a proceeding for contribution against said several owners. *Bates* v. *Ruddick et al.*, 2 Iowa 423, cited and approved.

*Appeal from Mahaska District Court.*

Friday, April 6.

A statement of the facts involved in this case, is presented in the opinion of the court.

*Rice, Myers & Rice* for the appellants.

I. The first levy was made under the direction of the judgment creditor, Casady, and it was upon property which he did not own, and was void.

II. Myers had a right to return the first execution, and the right to order the issuing of another follows as a matter of course. 3 Bac. Abr. 375, *et seq.*

III. It has been held by some authorities that a levy on personal property operates as a satisfaction of a judgment, but upon this point there is conflict. It is different, however, with a levy upon realty. Neither the right of property nor possession passes to the plaintiff, and a levy does not discharge the judgment. *Low* v. *Smith,* 4 Porter 56; *Fletcher* v. *Beach,* 2 Doug. (Mich.) 14 Wend. 260; 5 Ohio 107; *Greene* v. *Burke,* 23 Wend. 490.

*Seevers, Williams & Seevers* and *Z. T. Fisher* for the appellees.

I. When an execution has been levied on land with the assent of the execution plaintiff and defendant, and returned without sale by the order of such plaintiff, no new or *alias* execution can issue, nor can a new levy be made on other and different property. *Shepperd* v. *Rowe,* 1 Pet.; 14 Wend. 260; *Dorland* v. *Dorland,* 5 Cow. 417; 7 Cow, 13; 6 Wend. 562; *Greene* v. *Burke,* 19 Wend. 499; *Compton* v. *Field,* 3 Ib. 382; *Cain* v. *Smith,* 8 John. 337; *Down* v. *Burt,* 1 Wend 89; 3 Bac. Abr. (Title, executor) 707.

II. When a levy has been made, a new execution cannot be issued, nor a new levy be made, unless it is is shown that the first levy has been legally disposed of. *Starr & Smith* v. *Moore,* 3 McLean 364; *Hoyt* v. *Hudson,* 12 John. 206; *James* v. *Joliffe,* 9 Ib. 380. Nor is there any difference between levies on real and personal property, *McIntosh* v. *Chew,* 1 Blackf. 290; *Steele* v. *Murray,* Ib. 179; *Hopkins* v. *Chambers,* 7 Monroe 262; *Arnold* v. *Fuller's Heirs,* 1

Ohio 203; *Arnold* v. *Fuller's Heirs*, 1 Ib. 466; *Ladd* v. *Blunt*, 4 Mass. 302; *Cass* v. *Adams*, 3 Ohio 223.

III. The rights and property of *bona fide* purchasers can not be affected by the second execution, levy and sale until the levy made by virtue of the first execution has been legally disposed of.

IV. The judgment plaintiff should exhaust the property of the defendant in execution, before resorting to other property upon which the judgment may be a lien. *Bates* v. *Ruddick*, 2 Iowa 424.

V. The execution creditor is the purchaser and is chargeable, under the circumstances of this case, with notice of all irregularities in the sale, and of the equities between the parties, 2 Blackf. 1, and the authorities there cited.

Lowe, C. J.—The record in this case exhibits the following facts: On the 19th of June 1856, the plaintiff purchased of one A. M. Casady, by deed of conveyance which was filed for record on the same day, the following tracts of land, to wit: the west fractional half of the N. E. $\frac{1}{4}$, and the N. E. fractional quarter of the N. E. $\frac{1}{4}$, also the N. W. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of section two (2,) T. 74, N. R. 14 W., (excepting six acres deeded out of the several named tracts to John Morgan) containing one hundred and seventy eight and 52-100 acres. Plaintiff immediately thereafter took possession and has since occupied the same. On the 19th of February previous, Casady had confessed a judgment for $1302.-83 in favor of Louisa A. Seevers, administratrix, drawing ten per cent interest until paid. On the 3d of April 1856, $400 was paid upon said judgment. On the 22d of August, 1857, said judgment was assigned to John White. On the 18th of November, 1857, an execution was issued upon said judgment and levied by the sheriff upon a lot of ground in section 18, township 75, range 15 west, more particularly described as follows: commencing 7 22-100 chains east of the east end of High street in the city of Oskaloosa, old plat, thence south 4 31-100 chains to a stake, thence east 4 16-100 chains to a

stake, thence north 4 31-100 chains, thence west 4 16-100 chains to the place of beginning; the title and possession of which were in Casady, but upon which rested a mortgage lien of $150, with some accruing interest, in favor of the school fund. At the same time said execution was levied upon lot 8 in block 15 in the city of Oskaloosa. This lot on the 1st of January prior to the levy had been sold by Casady to the defendant Myers for the consideration of $2500, and Myers at the time of the levy occupied the same as a homestead. The levy upon both these pieces of property was made by the sheriff at the request and under the direction of Casady, with the assent and acquiescence of the attorney of Mr. White the assignee, and either was represented to be reasonably worth more than sufficient to satisfy the execution aforesaid and all previous incumbrances thereon.

After the above described property had been levied upon and advertised for sale, White assigned said judgment to Henry B. Myers, who at once ordered the sheriff to return the execution; and in a very few days thereafter, to wit, on the 30th day of November, 1857, caused an *alias fi. fa.* to be issued and levied not only upon the same property taken in the first execution, but upon the plaintiff's property first above described, and a vast amount of other property, amounting to $5,000. The whole was advertised for sale and on the 2d day of February 1858 there was sold at sheriff's sale the plaintiff's property first above described for $850, and lot 6 in block 3 in Been's addition to the city of Oskaloosa, for $285.06. The two pieces of property levied upon by the first execution, were not offered for sale at all, although persons were present at the sale wishing to bid upon and purchase said property at a sum sufficient to satisfy said execution There is evidence tending to show that both Myers and the officer had knowledge of that fact.

The foregoing embraces the material facts involved in this case, and upon these the court below made a decree agreeably to the prayer of the bill, setting aside the levy of the second execution, declaring the sale and proceedings under

the same null and void, and enjoining the defendant in the future from interfering with the rights of the plaintiff to the title and possession of his property, sold by virtue of said levy and execution.

The decree, under the circumstances, was substantially correct. Although the assignment of a judgment carries with it as a necessary incident the right to use the name of the party in whose favor the judgment was rendered, for all legitimate purposes in collecting the same, yet it was not competent for the assignee, any more than the original plaintiff, to regard a levy and an advertisement regularly made, under valid proceedings, upon property sufficient to pay the debt and subject to execution, as a nullity; and sue out immediately a second execution, directing the same to be levied not only upon the property taken under the first execution, but also upon a large amount of other property, including two or three pieces belonging to and in possession of the plaintiff. We do not say that under certain circumstances the plaintiff in the execution, or his assignee, may not have power to control the same, and to order a return after a levy and before a sale. It might be proper to do so when it is discovered that the proceedings under which execution issued were illegal or irregular; that the sale if made would be nugatory, or where a compromise is made with the defendant in the execution, whereby the debt is liquidated or the time of its payment extended, &c., &c. But under the state of facts existing in this case there was no power to issue a second execution until the levy under the first had been disposed of in some way known to the law. Yet, even if such power existed, in this case it was abused and unjustly exercised, as the facts subsequently developed show. These facts brought to the knowledge of the chancellor would authorize him to interpose the necessary correction. It appears that although the second levy included property the title and possession of which was in the execution defendant, and which the evidence shows could have been sold, subject to a small mortgage lien for an amount sufficient or nearly so, to satisfy the execution,

yet it was not offered.  Other property belonging to the plaintiff was sold by the sheriff, at the instance, it is believed, of the defendant Myers.  This was clearly unjust, not to say oppressive, and was done under circumstances indicating and evil purpose on the part of the defendant.  As he become the owner of the judgment by assignment, after the first levy had been made, which levy embraced two pieces of property, one belonging to Casady, the defendant in the execution, and the other to himself, but upon which the judgment was a lien, his course was a plain one.  That was, to let the property be sold under the first execution, selling Casady's first, and if that should fail to bring a sufficient amount to satisfy the debt, the residue he would hold, being the owner of the judgment, as a charge against all the property effected by the judgment lien, and if he could not find other property belonging to Casady out of which to make the balance of the claim, he would have the right to call upon the several purchasers under Casady to contribute their fair proportions with him in the payment of the residue of said judgment, agreeably to the doctrine laid down by this court in the case of *Bates* v. *Ruddick, et al.*, 2 Iowa 423.

Judgment affirmed.